US DISTRICT COURT
WESTERN DIST ARKANSAS
**FILED**
06/13/2018

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS,
FAYETTEVILLE DIVISION                          x
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TRICIA SCHMIDT, on behalf of themselves          :
and all others similarly situated,

                                                 :

                    Plaintiff,                   :

            -- against --                        :

MICKEL LAW FIRM; U.S. BANK N.A., as TRUSTEE      :
FOR CITIGROUP MORTGAGE LOAN TRUST, INC.
2006-NC2 ASSET BACKED PASS THROUGH               :
CERTIFICATES SERIES 2006-NC-2; CITIGROUP
MORTGAGE LOAN TRUST, INC. 2006-NC2 ASSET         x
BACKED PASS THROUGH CERTIFICATES SERIES
2006-NC-2; WELLS FARGO HOME MORTGAGE

                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Case No. __18-5109 PKH__

**COMPLAINT**

Jury Trial Demanded

Plaintiff Tricia Schmidt, individually and on behalf of all others similarly situated,
by and through her attorneys The Law Offices of Paul Grobman, allege as follows:

### NATURE OF THE CASE

1.  Plaintiff brings this class action against Defendants under the Fair Debt
Collection Practices Act, and for fraud and unjust enrichment on behalf of themselves and
all other similarly situated persons who were injured by actions of the Defendants.

2.  As set forth below, Defendants have engaged in misconduct in connection
with servicing and attempting to collect amounts purportedly owed on residential loans,
including, but not limited to, improperly commencing and maintaining foreclosure,
making false representations in official filings with the county clerk's office and/or courts

as a basis for establishing standing to foreclose, and charging fees and expenses associated with foreclosure which are illegal, excessive, unreasonable or otherwise improper.

## JURISDICTION AND VENUE

3.   The jurisdiction of the court is invoked pursuant to TILA, 15 U.S.C. § 1666d, "federal question" jurisdiction under 28 U.S.C.A. § 1331, and jurisdiction under the Class Action Fairness Act ("CAFA").  Jurisdiction of this court for the pendent claims is authorized by 28 U.S.C.A. § 1367.

4.   Venue is proper in this District in that Defendants are authorized to do business in Arkansas or at all times relevant herein have regularly conducted business within this District, and the acts complained of herein occurred in this District

## PARTIES

5.   Plaintiff Tricia Schmidt resides at 1106 East Freedom, Siloam Springs, Arkansas.

6.   The Mickel Law Firm is located in Little Rock, Arkansas.

7.   U.S. Bank N.A. does business around the country with its principal headquarters in Minneapolis, Minnesota.

8.   Wells Fargo Home Mortgage does business throughout the country and has it principal place of business and headquarters in San Francisco.

9.   Upon information and belief, Citigroup Mortgage Loan Trust, Inc. 2006-Nc2 Asset Backed Pass Through Certificates Series 2006-Nc-2 is a Delaware Trust.

## PLAINTIFFS' CLASS ACTION ALLEGATIONS

10. Plaintiffs brings this action pursuant to Federal Rule of Civil Procedure 23(a) and (b) on behalf of the following classes of persons:

A. All borrowers of loans originated by New Century which were secured by property which was foreclosed on by one of the defendants (or a foreclosure in which one of the Defendants served as a servicer or attorney) where – at some point after July 15, 2008 – defendants recorded documents in which New Century assigned or transferred rights to another entity;

B. All borrowers of loans which were secured by property on which a foreclosure was instituted by one of the defendants (or a foreclosure in which one of the Defendants served as a servicer or attorney) in which the borrower (i) paid legal fees which were not prorated or were otherwise in excess of the amounts allowed under the Fee Agreements, industry guidelines or relevant law; or (ii) paid expenses which were in excess of the amounts allowed under the Fee Agreements, industry guidelines or relevant law

11. Excluded from the Class are the Defendants, officers and directors of the Defendants, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

12. The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown, plaintiff believes there are thousands of members of the Class geographically dispersed throughout California and the United States.

13. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of the federal and state laws complained of herein.

14. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages suffered by members of the Class may be small, the expense and burden of individual litigation makes it virtually impossible for the Class members to seek redress on an individual basis for the wrongful conduct alleged. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are the following:

(a) Whether statutes were violated by Defendants' acts as alleged herein;

(b) Whether defendants routinely filed documents purportedly transferring rights and/or property interests from or to an entity which had been liquidated;

(c) whether the Defendants forced borrowers to pay fees or charges which were in excess of those allowed in their underlying loan documents, their fee agreements with counsel, or governing industry guidelines;

(d) whether defendants improperly charged fees in connection with foreclosures;

(e) whether the Defendants routinely and systematically violated FDCPA § 1692,; and

(f) whether the members of the Class have sustained damages as a result of the actions of Defendants complained of herein.

## FACTS

15. In or about July 21, 2006, Tricia Schmidt (hereinafter "Ms. Schmidt") and her then-husband Aaron entered into a loan transaction with New Century Mortgage Corporation in which they borrowed $113,126.00 (hereinafter "the First Mortgage").

16. On the same day, New Century also loaned the Schmidts $28,281.00 in a second mortgage transaction (hereinafter "the Second Mortgage")

17.  Sometime thereafter, Mr. Schmidt began physically abusing Ms. Schmidt and her kids, which precipitated Ms. Schmidt to seek a protective order and file a divorce action against her husband in or around 2017.

18.  Ms. Schmidt suffers from several debilitating illnesses and is unable to work. With the divorce action pending, and her husband unwilling or unable to pay the monthly installment payments due on the mortgage, Ms. Schmidt's became delinquent on the loan with New Century, and went into default.

19. On September 12, 2012, New Century by GMAC as its attorney in fact purported to assign the Second Mortgage to Residential Funding Company, LLC.

20. As defendants knew, the purported assignment of the Second Mortgage was false and palpably improper.   On April 2, 2007, New Century filed for bankruptcy in the United States Bankruptcy Court for the District of Delaware. (In re New Century TRS Holdings, Inc., et al., 07-10416-BLS (Bankr. D. Del.)) (the " New Century Bankruptcy" ). During the course of its chapter 11 case, New Century conducted, various sales of its loans and servicing rights.

21. On November 20, 2009, the Delaware Bankruptcy Court confirmed New Century's Second Amended chapter 11 plan, which provided for the transfer of all of New Century's remaining assets to a liquidating trust (the " Liquidating Trust" ) as of July 15, 2008.  Thus, at the time of the purported transfer of the Second Mortgage, New Century had nothing to assign.

22. On September 12, 2013, Residential Funding Co. purported to assign the Second Mortgage to 21st Mortgage Corp.

23. On January 20, 2017, New Century Mortgage Corp. by Wells Fargo Bank N.A. as their attorney in fact, purported to assign the first mortgage to U.S. Bank National Association, as Trustee for Citigroup Mortgage Loan Trust Inc. 2006-NC2 Asset Backed Pass-Through Certificates 2006-NC2.

24. As defendants knew or should have known, the purported assignment of the First Mortgage was false and palpably improper.   On April 2, 2007, New Century filed for bankruptcy in the United States Bankruptcy Court for the District of Delaware. (In re New Century TRS Holdings, Inc., et al., 07-10416-BLS (Bankr. D. Del.)) (the " New Century Bankruptcy" ). During the course of its Chapter 11 case, New Century conducted various sales of its loans and servicing rights.

25. On November 20, 2009, the Delaware Bankruptcy Court confirmed New Century's Second Amended chapter 11 plan, which provided for the transfer of all of New Century's remaining assets to a liquidating trust (the " Liquidating Trust") as of July 15, 2008.  Thus, at the time of the purported transfer of the First Mortgage, New Century had nothing to assign.

26. On April 26, 2017, U.S. Bank National Association, as Trustee for Citigroup Mortgage Loan Trust Inc. 2006-NC2 Asset Backed Pass-Through Certificates 2006-NC2 (hereinafter "the U.S. Bank" Trust") commenced the foreclosure process by filing a Notice of Default and Intention to Sell (hereinafter "the Notice of Default") executed by Mickel Law Firm, P.A. on the first mortgage.  The Notice of Default, which identified Wells Fargo Bank, NA. as the servicer of the loan, said that Ms. Schmidt's house would be sold on June 27, 2017.

27. Thereafter, the defendants purportedly published the Notice of Default in an Arkansas newspaper of general circulation on May 30, June 6th, June 13th and June 20th.

28. In response to a request from Ms. Schmidt, Wells Fargo Home Mortgage sent a reinstatement quote dated June 12, 2017 to Schmidt (hereinafter "the June 12th letter"), stating the amount necessary "for us to reinstate your loan and dismiss the foreclosure." Among other things, the letter represented that $6,512.34 in payments were due on the loan, along with $44.02 in late charges, $899.50 in "Foreclosure Fee/Cost", and $2,363.75 in "Unpaid Advance Bal." The letter said that the total amount due to reinstate the mortgage and dismiss the foreclosure was $9,819.61.   As the default and foreclosure were improperly commenced, these amounts were not due, and the representations that these amounts were owed were false.

29. At some point thereafter, Plaintiff asked for a breakdown and explanation of the amounts listed as owed on the June 12th letter.

30. On June 14, 2017, the defendants filed a Limited Power of Attorney (hereinafter "the POA") in the Benton County Clerk's Office which represented that it was prepared by the Mickel Firm.  According to the document – executed by Wells Fargo Bank N.A. as Servicing Agent for the U.S. Bank Trust (hereinafter "Wells Fargo as Servicing Agent") on June 5, 2017 – Wells Fargo as Servicing Agent appointed the Mickel Firm its attorney-in-fact for the purpose of executing, in place of Wells Fargo, assignments and "notices of default and intentions to sell" in connection with the Schmidt's mortgage.   The POA said that all acts undertaken in connection with the POA shall be done in the name of Wells Fargo.

31. As the defendants knew, since the Power of Attorney that delegated authority to the Mickel firm was not executed until June 5, 2017, well after the Notice of Default and Intention to Sell was filed, those two documents were invalid, and maintaining the foreclosure was improper.

32. By letter dated June 22, 2017, counsel for plaintiff sent a letter to the Mickel firm advising them that, because the foreclosure was not instituted in accordance with Arkansas law, it should be postponed.

33. Nevertheless, defendants continued to press forward with foreclosure, advising Plaintiff and her counsel that they would sell the home on June 27, 2017 unless the amounts purportedly owed were received by June 26th.

34. Pursuant to the demands made in the June 12th letter, on June 26, 2017, Plaintiff wired $9,820.00 to the defendants, in response to the representations regarding the amount owed.  Defendants received and collected these amounts on the same day. Since the foreclosure was improperly instituted, it was illegal for the Defendants to collect the legal fees and expenses associated with the foreclosure from Plaintiff.

35. By letter dated July 10, 2017, Wells Fargo, on behalf of the other defendants, replied to the request for an itemization of the amounts that were represented as owed in the June 12th letter.

36. Among other items, the July 10th letter stated that, "when we begin foreclosure proceedings, the fees and costs associated with the foreclosure are assessed to the account according to the terms of the Note and Mortgage."  According to the July 10th letter, among the fees and expenses which were charged to plaintiff were the following:

- $4.50 on April 26, 2017 in recording costs;

- $75.00 on May 9, 2017 for title updates;

- $820.00 on May 30, June 6, June 12, and June 20, 2017 for sale costs and publication;
- $350.00 on May 16, 2017 for a title policy;

- Two $300 charges on May 16, 2017 for "post sale notice";

- $160.00 on May 16, 2017 for "recording fees"; and

- $1,253.75 on May 16, 2017 for "attorney fees".

37. Because the foreclosure was improperly instituted, none of these amounts were properly collected from the Plaintiff.

38. Moreover, even if the foreclosure had been validly instituted, many of these fees were still improper including, but not limited to, the following:

- defendants failed to properly pro rate the legal fees charged to plaintiff;

- defendants charged $600 to "post sale notice."

**FIRST CAUSE OF ACTION**
**(Fair Debt Collection Practices Act, 15 U.S.C. (§ 1692 et. seq.) against the Mickel Firm)**

39. Plaintiffs repeat and reallege Paragraphs 1 through 38 of the Complaint as if fully set forth herein.

40. Defendant Mickel Law Firm is a debt collector within the meaning of 15 U.S.C. § 1692a because they regularly engage in debt collection for others.

41. In authoring and/or directing the other defendants to create and file documents which purported to transfer rights from New Century, a liquidated entity, the engaged in deceptive practices prohibited under § 1692e and § 1692f of the FDCPA.

42. In maintaining an improperly commenced foreclosure against the plaintiff, the Mickel firm engaged in deceptive practices prohibited under § 1692e and § 1692f of the FDCPA.

43. In filing the Limited Power of Attorney on June 14, 2017, well after after the foreclosure was instituted, the Mickel firm engaged in deceptive practices prohibited under § 1692e and § 1692f of the FDCPA.

44. In collecting legal fees and expenses from Plaintiff on June 26, 2017 in excess of the amounts allowed to be charged under governing law, relevant agreements and/or governing industry standards, the Mickel firm violated §1692f(1) of the FDCPA.

45. By reason of the aforesaid violations, the Mickel firm is liable to Plaintiff for statutory damages, actual damages to be established at trial and attorneys' fees and costs in accordance with 15 U.S.C. § 1692k.

## SECOND CAUSE OF ACTION
### (Breach of Contract against U.S. Bank and Citigroup Mortgage Loan Trust, Inc. 2006-Nc2)

46. Plaintiff repeats and realleges Paragraphs 1 through 45 of the Complaint as if fully set forth herein.

47. The Note and Mortgage between New Century and plaintiff permits defendants to recover fees and expenses from borrowers only if they have been "disbursed" and are "reasonable."

48. Because legal fees and expenses were charged based on a foreclosure which was improperly brought, those amounts were not reasonable within the meaning of the contract.

49. Moreover, even if the foreclosure had been properly instituted, the amount of the legal fees and expenses was unreasonable because they were (i) not properly prorated; (ii) never "disbursed"; and/or (iii) contrary to the Fee Agreement and/or governing industry guidelines.  As a result, U.S. Bank and Citigroup Mortgage Loan Trust, Inc. 2006-Nc2 have breached the terms of the Loan documents.

## THIRD CAUSE OF ACTION
**(Fraud against Wells Fargo, the Mickel Firm and U.S. Bank)**

50. Plaintiffs repeat and reallege Paragraphs 1 through 49 of the Complaint as if fully set forth herein.

51. Wells Fargo, the Mickel Firm and U.S. Bank had no right to file documents purporting to assign the first and second mortgages from New Century, a liquidated entity, to defendants U.S. Bank as Trustee and the Citigroup Trust.

52. In purporting to assign the first and second mortgages to these entities through the filed assignments, Wells Fargo, the Mickel Firm and U.S. Bank sought to create the false impression that the document was a valid assignment.

53. Plaintiff was unaware that New Century was a liquidated entity, and thus had no means of disputing the assignments by defendants as a basis for avoiding foreclosure.

54. As a result, Plaintiff was forced to pay legal fees and expenses based on a foreclosure which relied on an improper and invalid assignment.

55. In addition, Wells Fargo, the Mickel Firm and U.S. Bank also concealed the fact that the entity commencing foreclosure on behalf of the Citigroup Trust did not have the right to do so, since a Power of Attorney granting the right to the Mickel Firm was not

executed until June 5, 2017, well after the Notice of Default and Intention to Sell was filed. For this reason as well, the foreclosure action was improper and invalid.

56. Finally, even if the foreclosure was validly instituted, upon information and belief, Wells Fargo, the Mickel Firm and U.S. Bank concealed the fact that they collected legal fees from Plaintiff which were in excess of the amounts allowed under the Fee Agreement between the other Defendants and the Mickel Firm, and/or governing Fannie Mae and Freddie Mac standards.

**FOURTH CAUSE OF ACTION**
**(Arkansas Deceptive Trade Practice Act ("ADTPA")**
**against Wells Fargo, the Mickel Firm and U.S. Bank)**

57. Plaintiff repeats and reallege Paragraphs 1 through 55 of the Complaint as if fully set forth herein.

58. In filing documents in which New Century, a liquidated entity, purported to assign the first and second mortgages to other entities, Wells Fargo, the Mickel Firm and U.S. Bank engaged in unconscionable, false, and/or deceptive acts and practice in violation of the Arkansas Deceptive Trade Practices Act ("ADTPA"), Ark. Code Ann. §§4-88-107.

59. In maintaining an improperly commenced foreclosure against the plaintiff, Wells Fargo, the Mickel Firm and U.S. Bank engaged in unconscionable, false, and/or deceptive acts and practice in violation of Ark. Code Ann. §§4-88-107.

60. In filing the Limited Power of Attorney on June 14, 2017, well after the foreclosure was instituted, Wells Fargo, the Mickel Firm and U.S. Bank engaged in unconscionable, false, and/or deceptive acts and practice in violation of Ark. Code Ann. §§4-88-107.

61. In collecting legal fees and expenses from Plaintiff on June 26, 2017 in excess of the amounts allowed to be charged under governing law, relevant agreements and/or governing industry standards, Wells Fargo, the Mickel Firm and U.S. Bank engaged in unconscionable, false, and/or deceptive acts and practice in violation of Ark. Code Ann. §§4-88-107.

## FIFTH CAUSE OF ACTION
### (Unjust enrichment against all Defendants)

62. Plaintiff repeats and reallege Paragraphs 1 through 61 of the Complaint as if fully set forth herein.

63. By collecting legal fees and expenses under the above circumstances, Defendants received compensation which equity and good conscience should require them to restore.

**WHEREFORE**, Plaintiff respectfully prays for relief and judgment as follows:

(i) Determining that this action is a proper class action, certifying Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure, and appointing his counsel as class counsel;

(ii) Awarding compensatory and statutory damages in favor of Plaintiff and the other Class Members against the Defendants for all damages sustained as a result of the Defendants' wrongdoing, in an amount to be established at trial, including interest thereon;

(iii) Enjoining Defendants from engaging in any future conduct that violates governing agreements, applicable state or federal laws, or prevailing mortgage industry practice;

(iv) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees; and

(v) Awarding such other and further relief as the Court deems appropriate.

Dated:  New York, New York
         June 13, 2018

THE LAW OFFICES OF PAUL GROBMAN

Paul Grobman  (PG 1876)
555 Fifth Avenue, 17th Floor
New York, NY 10017
212 983-5880